Matthew BAKER, Appellant

v.

COMMONWEALTH of Kentucky,
Appellee

NO. 2014–CA–000044–DG

Court of Appeals of Kentucky.

RENDERED: MAY 8, 2015; 10:00 A.M.

Discretionary Review Denied by Supreme
Court December 10, 2015

BRIEFS FOR APPELLANT: R. Tucker Richardson, III, Lexington, Kentucky

BRIEF FOR APPELLEE: Elizabeth Bancroft, Special Assistant Attorney General, Lexington, Kentucky; Jack Conway, Attorney General, Frankfort, Kentucky

BEFORE: COMBS, KRAMER, AND TAYLOR, JUDGES.

*OPINION*

COMBS, JUDGE:

This appeal has been filed by Matthew Baker as a result of our grant of his

petition for discretionary review of a Fayette Circuit Court order. The Fayette Circuit Court had affirmed a Fayette District Court order denying a motion to suppress. At issue is whether the police had reasonable suspicion to initiate a traffic stop of Baker.

Baker was pulled over by Sergeant Jeff Anderson of the Lexington Division of Police in the early morning hours of January 26, 2013. The roads were covered with snow and ice. Sergeant Anderson observed Baker's car sway, although not abruptly, as it traveled in the right-hand lane. He followed Baker for almost two miles, and he observed the vehicle "hugging" the outer fog line of his lane. Although his tires never crossed the line, they were on the line and very close to the rumble strip. Anderson has been a police officer for fourteen years. He was in charge of "Traffic Safety Overtime," a federally-funded program that focuses on DUI enforcement. In Sergeant Anderson's experience, hugging the fog line is indicative of a driver's impairment or distraction. He testified that impaired drivers will use these lines to guide them in order to avoid being detected by the police. Sergeant Anderson activated his emergency lights and pulled Baker over. He conducted field sobriety tests and administered a portable breath test. Baker was later found to have a blood alcohol level of .187. Sergeant Anderson arrested Baker for operating a motor vehicle under the influence of alcohol, first offense with aggravator.

Baker filed a motion to suppress in the Fayette District Court, arguing that Sergeant Anderson did not have a reasonable, articulable suspicion to justify pulling him over. The motion was denied, and Baker entered a plea of guilty conditioned on his right to appeal the decision to the circuit court. The Fayette Circuit Court entered an opinion and order affirming the district court's decision. It also affirmed a subsequent order of the district court denying Baker's motion to reconsider. This Court granted Baker's petition for discretionary review.

Our review of a trial court's ruling on a motion to suppress is two-fold. First, the factual findings are deemed conclusive if they are supported by substantial evidence. Kentucky Rule[s] of Criminal Procedure (RCr) 9.78. If unsupported by substantial evidence, the trial court's factual findings are deemed clearly erroneous. *Commonwealth v. Banks*, 68 S.W.3d 347, 349 (Ky.2001). Second, we conduct a *de novo* review to determine whether the trial court's decision was correct as a matter of law. *Roberson v. Commonwealth*, 185 S.W.3d 634, 637 (Ky.2006).

"[S]topping an automobile and detaining its occupants constitute a 'seizure' under the Fourth Amendment." *Chavies v. Commonwealth*, 354 S.W.3d 103, 108 (Ky.2011) (citing *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) (citations omitted)). Traffic stops are similar to *Terry* stops and must be supported by articulable, reasonable suspicion of criminal activity. *Id.* In *Terry v. Ohio*, the United States Supreme Court held that "in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). Reasonable suspicion is the lowest tier of the pyramid comprised of probable cause (level two) and preponderance of the evidence (level three): "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying the preponderance of the evidence standard."

*United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).

The circuit court made the following findings:

> Officer Anderson observed Baker's vehicle sway into the right lane at approximately 2:00 A.M. The vehicle then proceeded to drive closely along the passenger side fog line for approximately two miles until Officer Anderson performed a traffic stop. In Officer Anderson's personal experience, a car driving closely along a fog line signifies an impaired or distracted driver.
>
> Based on Officer Anderson's fourteen years of experience as a police officer and his observations of the vehicle, there was reasonable suspicion Baker's vehicle was operated by an impaired driver.

These findings are amply supported by substantial evidence in the form of Officer Anderson's testimony. Therefore, we shall confine our analysis to a *de novo* review of the legal conclusions of the trial court.

■ Baker argues that the non-pronounced weave of his vehicle and hugging the fog line were insufficient evidence to create reasonable suspicion. He relies on several opinions from other jurisdictions, including *State v. Binette,* 33 S.W.3d 215 (Tenn.2000), in which the police observed a driver who swerved multiple times within his own lane—although not in an exaggerated or pronounced manner—and touched the center line with his tires twice. The Tennessee Supreme Court held that these facts were not sufficient to support reasonable suspicion, stating that "[i]f failure to follow a perfect vector down the highway . . . [was] sufficient reason[ ] to suspect a person of driving while impaired, a substantial portion of the public would be subject each day to an invasion of their privacy[.]" *Binette,* 33 S.W.3d at 219–20 (quoting *United States v. Lyons,* 7 F.3d 973, 976 (10th Cir.1993)).

Baker argues that requiring a driver to follow a "perfect vector" is particularly unreasonable when, as in his case, the road is covered with ice and snow. But the facts of Baker's case are significantly distinguishable from those of *Binette.* Baker was not weaving repeatedly within his own lane, nor was the police officer expecting him to follow a "perfect vector" as he drove down the road. Instead, Baker appeared to be consciously hugging the fog line, presumably in an attempt (as Sergeant Anderson suspected) to prevent any tell-tale weaving.

Our review shows that many courts in other jurisdictions have held that a car weaving in its own lane is sufficient evidence on its own to create a reasonable suspicion. In Minnesota, for example, "[e]ven observing a motor vehicle weaving within its own lane in an erratic manner can justify an officer stopping a driver." *State v. Richardson,* 622 N.W.2d 823, 826 (Minn.2001). The Arizona Supreme Court has held that weaving within a lane was "a specific and articulable fact which justified an investigative stop." *State v. Superior Court,* 149 Ariz. 269, 718 P.2d 171, 175 (1986).

In another case relied upon by Baker, *State v. Hess,* 37 Kan.App.2d 188, 153 P.3d 557, 558 (2006), a police officer observed a driver travel close to the broken line dividing the lanes of the roadway and saw the vehicle occasionally drive upon or touch the broken line. The officer "opined that, in his experience, when a driver is either hugging the line or closely following the curb, it indicates that the driver is 'concentrating harder' because of the driver's impairment." *Hess,* 153 P.3d at 560. The Kansas Court of Appeals held that this evidence, standing alone, was not enough to create a reasonable suspicion. It reviewed other cases upholding a finding of

reasonable suspicion involving hugging the line or curb, which did not rely solely on that fact,

> but involve other factors contributing to the totality of the circumstances. See, e.g., *State v. Flowers*, 131 Idaho 205, 208–09, 953 P.2d 645 (1998) (driving slow, "hugging of the fog line," weaving within own lane of traffic, and crossing both the fog line and centerline).

*Id.* at 561. Baker was hugging the fog line for a considerable distance of almost two miles, at times approaching the rumble strip. Additionally, his vehicle swayed within the right lane, thus alerting Officer Anderson that he might be impaired. These observations were sufficient to create a reasonable suspicion to justify a brief investigatory stop.

Although there is no Kentucky case directly on point, we believe that the circuit court's reasoning harmonizes with the holding of *Steinbeck v. Commonwealth*, 862 S.W.2d 912 (Ky.App.1993). In *Steinbeck*, the driver approached a sobriety checkpoint set up by the police at about 3:00 a.m. Rather than proceeding to the checkpoint, he turned and drove along an unpaved country road with no visible structures or housing along its route. A police officer pulled him over and discovered that he had been drinking. There was no evidence that the driver had been weaving, speeding, or in any way violating a traffic law. In seeking to suppress the evidence, the driver cited "a litany of foreign cases which stand for the proposition that the fact that a car turns in a manner to avoid a roadblock, standing alone, is insufficient to create a reasonable suspicion to justify a stop." *Steinbeck*, 862 S.W.2d at 913. Nonetheless, a panel of this Court held that the court properly denied his motion to suppress because:

> [w]e believe that the appellant's turn away from the sobriety checkpoint, cou-

pled with the deputy sheriff's experience in similar instances, the time of day and the nature of the roadway onto which the appellant turned, constitute specific, reasonable and articulable facts which allowed the police officer to draw an inference sufficient to form reasonable suspicion that the driver might have been engaging in criminal activity.

*Id.* at 914.

We note also the reasoning of *Greene v. Commonwealth*, 244 S.W.3d 128, 134–35 (Ky.App.2008) (citations omitted):

> When considering the totality of the circumstances, a reviewing court should take care not to view the factors upon which police officers rely to create reasonable suspicion in isolation. Courts must consider all of the officers' observations, and give due weight to the inferences and deductions drawn by trained law enforcement officers.

Sergeant Anderson's experience dictates that hugging the fog line often indicates the activity of an impaired driver. His opinion is of evidentiary significance, and it may not be discounted as merely a case of donning "DUI-colored glasses" as Baker argues. This evidence, coupled with the swerve of Baker's vehicle within the lane, constituted sufficient evidence to justify a traffic stop.

We affirm the order of the Fayette Circuit Court affirming the denial of the motion to suppress by the Fayette District Court.

KRAMER, JUDGE, CONCURS

TAYLOR, JUDGE, DISSENTS, AND WILL NOT FILE SEPARATE OPINION.