*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-1720**
**A15-1725**

Carole Jean Halverson, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent,

and

State of Minnesota,
Respondent,

vs.

Carole Jean Halverson,
Appellant.

**Filed August 29, 2016**
**Affirmed**
**Larkin, Judge**

Hennepin County District Court
File No. 27-CR-14-21282

Lori Swanson, Attorney General, St. Paul, Minnesota; and

David K. Ross, Maple Plain City Attorney, Carson, Clelland & Schreder, Brooklyn Center, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Rodenberg, Judge; and Randall, Judge.[*]

## UNPUBLISHED OPINION

**LARKIN**, Judge

In these consolidated appeals, appellant challenges her conviction of third-degree driving while impaired (DWI). In file A15-1725, appellant argues that the district court erred by denying her motion to suppress evidence obtained during a traffic stop. In file A15-1720, appellant challenges the postconviction court's denial of relief, but she does not allege error. We affirm.

## FACTS

Respondent State of Minnesota charged appellant Carole Jean Halverson with two counts of third-degree DWI. Halverson moved to suppress evidence obtained during the underlying traffic stop of her vehicle, arguing that the stop was unlawful. The district court held a hearing on Halverson's motion, heard testimony from West Hennepin Public Safety Officer Matthew Rosati, and found the relevant facts to be as follows.

At approximately 6:45 p.m. on June 27, 2014, the Hennepin County Police Department received a call from a citizen reporting that a blue BMW with license plate 145GMG was driving extremely slowly and weaving across the fog and center lines. Officer Rosati responded to the report and located the car, which was unoccupied and parked in a parking lot. Officer Rosati testified that he ran a computer check and learned

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

2

that the vehicle was registered to V.H., who had a revoked driver's license. Officer Rosati testified that he looked for V.H. in the area, did not find her, and left the area to assist an officer in another location.

About two hours later, Officer Rosati saw the vehicle leave the parking lot where he had observed it earlier. He followed the vehicle until it pulled over to the side of the road. After the vehicle did not move for approximately 30 seconds, Officer Rosati turned on his emergency lights and initiated a traffic stop. Halverson was driving the vehicle. When Officer Rosati approached the vehicle, he smelled alcohol and noticed that Halverson's eyes were bloodshot and watery and that her speech was slurred. Halverson failed field sobriety tests, and Officer Rosati arrested her for DWI.

The district court denied Halverson's motion to suppress. According to the district court, Halverson "entered a *Lothenbach* plea," "[t]he parties stipulated to facts pursuant to Minnesota Rules of Criminal Procedure, Rule 26.01, subdivisions 3 and 4," and the district court found Halverson guilty of both counts and convicted her.[1] Halverson petitioned for postconviction relief, arguing that she did not understand the court procedure or the consequences of waiving her rights. She also argued that she was not the driver of the vehicle. The postconviction court denied relief. Halverson separately appealed the district

---

[1] In describing the "stipulated facts" procedure to Halverson on the record, her attorney stated that "we're letting the State enter all of their evidence to the judge" and that the procedure "preserves your right to appeal the judge's pretrial hearing." It appears that the parties intended to proceed under Minn. R. Crim. P. 26.01, subd. 4. *See State v. Myhre*, 875 N.W.2d 799, 802 (Minn. 2016) (noting that Minn. R. Crim. P. 26.01, subd. 4, "replaced *Lothenbach* as the method for preserving a dispositive pretrial issue for appellate review in a criminal case").

court's final judgment and the postconviction court's denial of relief, and this court consolidated the appeals.

## DECISION

Halverson argues that "[t]he district court's suppression ruling must be reversed because the police lacked a reasonable, articulable suspicion to stop [her] vehicle." The United States and Minnesota Constitutions prohibit unreasonable searches and seizures by the government. U.S. Const. amend. IV; Minn. Const. art. I, § 10. However, a police officer may initiate a limited, investigative stop without a warrant if the officer has reasonable, articulable suspicion of criminal activity. *State v. Dickerson*, 481 N.W.2d 840, 843 (Minn. 1992) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884 (1968)), *aff'd*, 508 U.S. 366, 113 S. Ct. 2130 (1993).

In assessing reasonable suspicion, Minnesota courts "consider the totality of the circumstances and acknowledge that trained law enforcement officers are permitted to make inferences and deductions that would be beyond the competence of an untrained person." *State v. Richardson*, 622 N.W.2d 823, 825 (Minn. 2001). The reasonable-suspicion standard is "less demanding than probable cause," but requires more than an unarticulated "hunch." *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008) (quotation omitted). Reasonable suspicion justifies a seizure "so long as the facts support at least one inference of the possibility of criminal activity." *State v. Klamar*, 823 N.W.2d 687, 693 (Minn. App. 2012) (quotation omitted). This court reviews a district court's reasonable suspicion determination de novo, but accepts the district court's factual findings unless they are clearly erroneous. *State v. Smith*, 814 N.W.2d 346, 350 (Minn. 2012).

4

*State v. Pike* is dispositive of the issue in this case.  551 N.W.2d 919 (Minn. 1996).  In *Pike*, an officer observed a vehicle traveling at a low speed, became suspicious, ran a computer check, and discovered that the registered owner of the vehicle had a revoked driver's license.  *Id.* at 921.  The officer observed that the driver of the vehicle was a man who appeared to be in the same age category as the registered owner and stopped the vehicle.  *Id.* at 920-21.

The supreme court held that "it is not unconstitutional for an officer to make a brief, investigatory, *Terry*-type stop of a vehicle if the officer knows that the owner of the vehicle has a revoked license so long as the officer remains unaware of any facts which would render unreasonable an assumption that the owner is driving the vehicle."  *Id.* at 922.  The supreme court reasoned that "[w]hen an officer observes a vehicle being driven, it is rational for him or her to infer that the owner of the vehicle is the current operator."  *Id.*  However, such an inference would be unreasonable when, for example, the officer knows "that the owner is a 22-year-old male, and the officer observes that the person driving the vehicle is a 50- or 60-year-old woman."  *Id.*

Halverson contends that the facts of this case fall within the *Pike* exception.  Halverson argues that "[u]nlike the officer in *Pike*, Rosati did not have any information about the appearance of either the earlier or later driver to create the reasonable inference that the revoked registered owner was the driver."  She further argues that "without this information, any reasonable suspicion that the driver was the primary owner with a revoked license evaporated."

Halverson misconstrues *Pike*'s holding. *Pike* does not require an officer to observe or otherwise confirm that a driver's physical appearance is consistent with that of the vehicle's registered owner before stopping the vehicle based on the owner's revoked status. To the contrary, "[w]hen an officer observes a vehicle being driven, it is rational for him or her to infer that the owner of the vehicle is the current operator." *Id.* Thus, Officer Rosati's failure to observe the driver's appearance before stopping the vehicle does not invalidate the stop.

Halverson argues that Officer Rosati's knowledge of the existence of a secondary registered owner rendered the assumption that V.H. was driving unreasonable. Officer Rosati testified that his computer check revealed that the vehicle had a main registered owner, V.H., and a secondary registered owner. But the computer check did not provide identifying information regarding the secondary registered owner.

Knowledge regarding the existence of an unidentified secondary owner did not make the assumption that V.H. was driving unreasonable. Given that Officer Rosati did not observe the driver's appearance before the stop and did not have identifying information regarding the secondary registered owner, the facts here are not comparable to the example described in *Pike*. See *id.* (contrasting a 22-year-old male registered owner with a driver who appears to be a 50- or 60-year-old woman). Absent information to the contrary, Officer Rosati could reasonably infer that the primary registered owner of the vehicle was driving, even though he knew there was a secondary registered owner.

Halverson further argues that Officer Rosati knew that V.H. was not in the vicinity of the vehicle because he looked for her in the area when he first observed the vehicle and

6

did not find her. We are not persuaded that Officer Rosati's inability to locate V.H. changes the outcome. The fact that Officer Rosati did not initially locate V.H. in the area of the vehicle does not make his assumption that she was driving the vehicle approximately two hours later unreasonable.

Once again, it was not necessary for Officer Rosati to confirm the assumption that the revoked registered owner of the vehicle was driving the vehicle. What matters is that Officer Rosati was not aware of any facts that would render that assumption unreasonable. Thus, Officer Rosati's knowledge that V.H.'s driver's license was revoked, coupled with his observation of the vehicle being driven, provided reasonable suspicion to stop the vehicle. *See id.* (allowing traffic stop where officer knows the owner of a vehicle has a revoked license and sees the vehicle being driven).

Although Halverson appealed the postconviction court's denial of relief, she has not assigned error to that decision on appeal. Error is never presumed on appeal; the party claiming error has the burden of demonstrating it. *White v. Minn. Dep't of Nat. Res.*, 567 N.W.2d 724, 734 (Minn. App. 1997), *review denied* (Minn. Oct. 31, 1997). Because Halverson has not alleged or shown error stemming from the postconviction court's ruling, we affirm its decision.

**Affirmed.**

7